IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

THE ESTATE OF HELEN ESTINE
MENDENHALL, DECEASED, BY
SCOTT BALCOM, as Personal
Representative and Individually, and
GINA DILLON,

    Plaintiffs,

vs.                                            No. 13cv0209 –MCA/RHS

THOMAS MENDENHALL and the
MENDENHALL TRUST,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
SUMMARY JUDGMENT**

**THIS MATTER** is before the Court on Defendant Thomas Mendenhall's *Motion for Summary Judgment*, filed August 2, 2013 [Doc. 26], and on his *Objection to Order Allowing Plaintiffs to Amend Complaint*, filed August 17, 2013 [Doc. 31]. Having considered the parties' submissions, the record, and the relevant law, the Court will grant the motions and dismiss the Complaint.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

This action is the latest in a series of actions and complaints in which Scott Balcom and his sister, Gina Dillon, have sought, either on behalf of their aunt, Helen Estine Mendenhall, or as the beneficiaries of her estate, to obtain control over the Mendenhall Trust or its assets and/or to obtain damages from Thomas Mendenhall, the Trustee of that Trust. The Trust was created in 1998 to hold assets owned by Helen and/or her husband, Howard Mendenhall, first for their benefit, and ultimately, for the benefit of Howard's two natural children, Thomas and Jewell.

*See* Compl. at 17-47 (Mendenhall Trust). Thomas was expressly named as the successor Trustee who was to take over the trustee duties if Helen and Howard could not "discharge the duties of trustee because of mental or physical infirmity." Compl. at 36 (Trust). Helen and Howard, who married in 1968 when Helen was 35 and Howard was 52, had no other children, and the Trust was funded principally by property Howard acquired before they were married because Helen was never employed. *See* Doc. 27-4 at 1, 3-4. Helen had been deaf since the age of 3; had very little formal education and could not read well, but until she suffered a stroke and her father died, she could understand documents that were read to her. *See* Doc. 27-4 at 2. Before the Trust was created, in 1970, the Mendenhalls, as part of a "joint venture," each prepared wills "somewhat identical in character" leaving their estates to each other, and when the survivor died, to Thomas and Jewell with the "mutual understanding and intention . . . that neither may change his will without the written consent of the other." Doc. 27-5 at 1-2. The Mendenhalls each executed new "pour over" wills in 1998 when they created the Trust, both of which made the Trust the beneficiary of any assets that were not already in the Trust. When the Mendenhalls created their trust in 1998, Helen's father, James Bascom, created a separate trust containing half of his assets for Helen, which became effective upon his death in 2007, and which would pass to Helen's brother or his heirs (Scott and Gina) upon Helen's death. *See id.* at 3-5. After Helen's father died in 2007 (when Helen was 74), she began displaying "significant signs of mental deterioration, including impaired memory, and a diminished ability to understand anything of a complex nature," and Scott took Helen to an attorney in late April 2007 "to sign a power of attorney authorizing him to act for her in the management of her inheritance from her father." *Id.* at 4-5.

2

According to her treating physician, by April 16, 2007, Helen had become "easily convinced of any suggestion and agreeable but likely not [to] understand the significance of an action or be able to remember what she had done," which would make her "unable to make a complex decision." Doc. 27-5 at 8. Howard served as the Trustee of the Mendenhall Trust and managed all of their finances until February 2008, when, at the age of 92, he fell and suffered a serious head injury and his physicians certified that he could no longer manage their finances as Trustee. Doc. 27-4 at 5; Doc. 27-5 at 9-10. Helen had also been recently hospitalized. See Doc. 27-5 at 12. Thomas took over as successor Trustee on March 26, 2008 after two of Helen's treating physicians certified that she did not have the mental or physical capacity to make complex or "financial and household decisions;" that she had "difficulty hearing and a very difficult time communicating;" and that she was not capable of "maintaining a bank account or personal finances." Doc. 27-4 at 5; Doc. 27-5 at 11-12. In April 2008, Thomas moved the Mendenhalls from Indiana to New Mexico to live with him and his wife, and Thomas "managed the Trust for their benefit." *See* Doc. 27-4 at 6. Howard died in December, 2009 in New Mexico, but Helen continued living with Thomas until February 2010, when Gina took Helen to Georgia for what Thomas understood would be a visit. *See id.*

Helen had signed a "Special Durable Health Care Power of Attorney" and a general Durable Power of Attorney in 1998, giving Howard, and in his inability to act, Thomas (as successor attorney-in-fact), power to manage all of her health decisions and financial and business affairs "upon the determination that I am disabled or incapacitated or no longer capable of managing my affairs prudently" as established by "the certificate of a qualified physician stating that I am unable to manage my affairs." Doc. 27-5 at 3-7. This power of attorney terminated only "upon the execution and recordation with the Recorder's Office of the County of my domicile of a

3

written revocation." *Id.* Helen specifically requested that Howard (and in his inability, Thomas) be appointed as her guardian, should she need one. *See id.* at 4, 7.

On May 6, 2010, however, without giving prior notice to Thomas, Scott and Gina filed a state guardianship action in Indiana, *In re Helen Estine Mendenhall*, No. 32D01-1005-GU-000036 (Hendricks Superior Court). *See* Compl. at 2; Doc. 27-3 at 25; Doc. 27-5 at 34. The state court granted Scott and Gina guardianship over Helen on June 14, 2010, Doc. 27-5 at 15, noting at a subsequent hearing that her examining physician had reported on April 27, 2010, that, although Helen could "decide where she wants to live, what to eat . . . [and what] recreational pursuits" she wanted to engage in, Helen could not "handle money or make financial decisions or decisions related to health." Doc. 27-3 at 22 (Tr. of hearing); Doc. 27-4 at 8; Doc. 27-5 at 31 (physician's report stating that Helen was "blind in one eye, illiterate [with] memory disorder [and] mental retardation due to social/educational factors and stroke"). Scott and Gina then proceeded in September 2010 to file a motion in the Indiana guardianship proceedings to attempt to "docket" the Mendenhall Trust and to appoint Scott, instead of Thomas, as the trustee of the Trust.

In addition, notwithstanding the fact that Helen had already been medically declared incompetent by April 2010 and Scott and Gina were adjudged to be her guardians by June 14, 2010, on November 10, 2010, Helen and the Mendenhall Trust filed a tort suit against Thomas in New Mexico state court, alleging "conversion" and his "breach of agency and fiduciary duties" as Trustee, and demanding an accounting. *See Mendenhall v. Mendenhall*, No. D1314cv2010-1434 (13th Jud. Dist. Nov. 10, 2010). Doc. 27-2 at 1-2. Thomas filed counter claims against Scott and Gina as third-party defendants.

Helen died in Georgia in February 2011. Doc. 27-4 at 8. In March 2011, the Indiana court held that the Mendenhall Trust's assets were separate from Helen's assets and, therefore, not subject to Scott and Gina's guardianship. *See* Doc. 27-3 at 23 ("the Trust is totally outside the guardianship.") The court held that it had judicially determined that Helen was incompetent to handle her assets in the earlier guardianship proceedings, thus by the Trust's express terms, Thomas was already the Trustee. *See id.* The court refused to docket the Trust or appoint Scott as trustee, terminated the guardianship, and dismissed the proceedings, and Scott and Gina did not appeal. *See* Doc. 27-3 at 25.

Soon after her death in February 2011, Thomas applied in a New Mexico probate court to informally probate Helen's 1998 will (of which the Mendenhall Trust was the only beneficiary, *see* Doc. 64-1 at 10) and to be appointed the personal representative of Helen's estate. *See* Doc. 10 at 3 (Stipulations). He gave written notice to Scott and Gina of the probate proceedings. *See* Doc. 21 at 19-21. In response, Scott filed a probate action regarding a different will, which Helen had apparently signed in 2001, in Indiana and a formal probate action in the New Mexico state district courts, so Thomas did not continue to attempt to execute the 1998 will, nor did he ever make any claims on behalf of himself or the Trust for Helen's assets that were probated in the 2001 will.

In September 2011, Thomas filed a motion for summary judgment supported with documentary evidence that Helen had already been found to be incompetent and unable to manage financial affairs by her doctors by March 2008 and had been judicially found to be incompetent by at least June 2010; that he was the valid Trustee and his control was lawful and authorized by the Trust; that he had properly accounted for the Trust assets even though he had no duty to do so under the terms of the Trust; that Helen had made no demands for distributions

for her needs and there was no evidence of conversion; and that neither Scott nor Gina had a legal interest in the Trust or its assets.  Doc. 27-3 at 1-20.

Even though their guardianship had been terminated by the Indiana court in March 2011 because of Helen's death, Scott and Gina responded to the motion for summary judgment as Helen's "guardians" and as third-party defendants on October 20, 2011, and Scott submitted an affidavit in support of the response.  *See* Doc. 27-6 at 1-13.  They did not, however, present competent evidence to contradict most of Thomas's statements of undisputed fact.  They argued that Thomas's assumption of the Trustee position was unlawful because "Helen was competent" and that Thomas failed to follow the Trust's requirements for succession; that he violated his fiduciary duties as a Trustee because he had a conflict of interest and that he "manipulated" Helen "for his own personal benefit;" and that the filing of the November 2010 complaint was proof of Helen's demand to be given the assets of the Trust.  *See id.*  The district court ruled on Thomas's summary-judgment motion in May 2012 and dismissed the complaint with prejudice, finding Thomas was the "duly appointed  Personal Representative" of Helen's estate and no motion to substitute anyone else for Helen had been made; and that "Defendant Thomas Mendenhall is the Trustee of the Mendenhall Trust and the Third Party Defendants [Scott and Gina] have no interest in the Trust."  Doc. 27-8 at 1.  Neither Scott nor Gina appealed from the dismissal with prejudice.  But in September 2012, over a year after they had filed the formal probate proceedings in New Mexico based upon Helen's 2001 will, they  successfully moved in those formal probate proceedings to set aside Thomas's appointment as personal representative.  As noted above, the 2001 will left Helen's assets that were outside the two trusts to her brother, and then to Scott and Gina, and Scott was appointed as personal representative of Helen's estate.  *See* Doc. 10 at 3 (Stipulations).

On January 30, 2013, Scott, appearing as Helen's estate's personal representative, together with himself and Gina, individually, filed the Complaint at bar in state court against Thomas, again alleging conversion and again demanding an accounting on the same set of facts. Compl. at 1 [Doc. 1 at 6]. The Complaint is virtually identical to the 2010 state-court complaint that was dismissed with prejudice except that it added a count alleging negligent representation and fraud. Thomas removed the case to this Court based on diversity jurisdiction. *See* Doc. 1. In his answer, he raised, *inter alia*, the affirmative defense that *res judicata* and collateral estoppel barred the Plaintiffs' claims, and he attached copies of the relevant New Mexico and Indiana state-court orders. *See* Doc. 19 at 5.

In a joint status report filed May 29, 2013, Plaintiffs stated that they were going to move to amend their Complaint to additionally allege state statutory causes of action so that they could "seek a remand of the case to state district court. Plaintiffs contend that their claims, including probate and trust issues arising under the New Mexico Probate Code and under the New Mexico Uniform Trust Code are exceptions to diversity jurisdiction of the federal court and that the case should be remanded to state court." Doc. 10 at 3.

II.     ANALYSIS

A.  **The Plaintiffs' motion to amend should have been denied.**

Plaintiffs moved to amend their Complaint on June 28, 2013. Doc. 20. Thomas objected, arguing that the Plaintiffs had failed to timely file a "motion to remand on the basis of any defect other than lack of subject matter jurisdiction;" that the amended complaint represented "the plaintiffs' fourth attempt in three years to reach the assets of the Mendenhall Trust;" and prior attempts had been dismissed with prejudice and not appealed and the Defendants "intend to file a motion to dismiss based on *res judicata*;" that the new "legal theories are different, [but] the

7

factual allegations are essentially the same" as the allegations in the prior, dismissed complaint; that there were no allegations "that defendant has interfered with the distribution of [Helen's] probate estate," thus there was no valid claim under the New Mexico Probate Code and no basis for invoking "the probate exception to diversity jurisdiction;" that Plaintiffs had all the information necessary to assert their disputed [new probate, trust, and undue-influence] claims, either in Indiana or in New Mexico, for two years prior to the pending motion" and unduly delayed and were dilatory in bringing those claims now, which unfairly prejudiced him; and that the claims brought under the New Mexico Trust Code were "both groundless and futile" because the Trust expressly provides that "'This trust shall be governed by the laws of the State of Indiana;'" and, even if the New Mexico Uniform Trust Code did apply, the "one year statute of limitations in NMSA 1978, §46A-1-1005, would bar plaintiffs' claims."  Doc. 21 at 1-12.  Defendants attached copies of the prior state-court complaint, the order dismissing that complaint, and written proof that Thomas had, in fact, given the Plaintiffs written notice of his filing of the informal probate.  *See id.* at 13-21.

In reply, Plaintiffs argued that the purpose of the amendment was not solely "to defeat diversity," but also was based "upon a necessary reformation of the Complaint in fairness to Plaintiffs, allowing them to properly redress the wrongs committed against them and the estate of Helen Estine Mendenhall, deceased and to assert claims inadvertently omitted in the original Complaint."  Doc. 23 at 2.  Plaintiffs admit, however, that "[t]he state court proceedings involved a deposition of Thomas Mendenhall that led to discovery of the facts needed to prove Plaintiffs claims as alleged in the First Amended Complaint," *id.* at 3, and they did not explain why they neither amended the first-state-court complaint to include the claims nor included the claims in the original Complaint filed almost two years after that deposition.  Plaintiffs further argued that

Defendant would not be prejudiced by amendment because he "fails to disclose that the [state-court] dismissal [of the prior complaint against Defendant] was triggered by Thomas Mendenhall causing his own attorney to file a suggestion of death on Helen Estine Mendenhall and that he was wrongfully appointed as her personal representative [in the informal probate proceedings] and later removed." *Id.* at 4.  Plaintiffs otherwise did not address the merits of Defendants' response.  Defendants filed a motion for summary judgment based on *res judicata* on August 2, 2013.

In the Order granting Plaintiffs permission to amend, Magistrate Judge Robert H. Scott stated only that this was the "first amendment sought by Plaintiffs and justice requires that it be allowed."  August 5, 2013 Order at 1.  Magistrate Judge Scott did not address any of the Defendants' objections to amendment based on undue delay, bad faith, dilatory motive, unfair prejudice and futility of the amendment.  The Defendants timely filed Objections.  Citing and incorporating his Response to the Motion to Amend, Defendants again argue that the Magistrate Judge failed to properly apply the criteria for granting an amendment set forth in *Foman v. Davis,* 371 U.S. 178 (1962); that the "alleged 'new facts' are not new, and that plaintiffs' motivation for amending the compliant is simply to defeat diversity jurisdiction;" that "the record shows that the plaintiffs have been unduly dilatory [and] . . . there has been a clear showing that the amended complaint will result in undue and unfair prejudice to defendants because they will be required to defend against futile claims."  Doc. 31 at 2.  In response, Plaintiffs made the same arguments they made in their reply brief on the motion to amend.  *See* Doc. 34 at 1-3.  Defendants point out that Plaintiffs "offer no explanation for why it took 13 months from the dismissal of the first [state-court] complaint, and almost three years from the

9

filing of the first [state-court] complaint (November 9, 2010), to sort out their claims" and that the "essence of the allegations is the same." Doc. 36 at 2.

This Court concludes that Defendants' objections should be affirmed. Plaintiffs failed to even address their undue delay in bringing all the claims that could be supported by the facts alleged in the first state-court complaint, and they admit that they learned additional facts during the course of that proceeding that they could have relied on to request amendment in that case. The Plaintiffs were unreasonably dilatory in failing to include the "new" facts and causes of action in their original state-court complaint. This Court further concludes that amending the Complaint to additionally allege violations of the New Mexico Uniform Trust Code and the Uniform Probate Code would be futile because the Trust is controlled by Indiana law and there are no allegations that Scott or Gina were in any way actually damaged by Thomas' attempt to informally probate Helen's 1998 will, of which they undisputedly had notice. Further, if they had wanted to avoid dismissal of the first state-court case based on Thomas's appointment as Helen's personal representative, they could easily have filed a motion to substitute Scott as the estate's personal representative during the time between Helen's February 4, 2011 death and the May 2012 dismissal, but they did not choose to do so. The Court will reverse and set-aside the Order permitting amendment, and will deny the motion to amend.

**B. The Defendants are entitled to summary judgment.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Because this case is here on diversity jurisdiction, the Court must

> apply New Mexico law to determine whether claim preclusion, also known as res judicata, bars [the] second suit. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, 28 U.S.C. § 1738, which directs a federal court to refer to the preclusion

law of the State in which judgment was rendered." *Brady v. UBS Fin. Servs., Inc.,* 538 F.3d 1319, 1327 (10th Cir.2008) (internal quotation marks omitted).

Under New Mexico law, [t]he party asserting res judicata must satisfy the following four requirements: "(1) [t]he parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits." *Kirby v. Guardian Life Ins. Co. of Am.,* 148 N.M. 106, 231 P.3d 87, 105 (2010) (internal quotation marks omitted). "*Res judicata* bars not only claims that were raised in the prior proceeding, but also claims that could have been raised." *Id.* (internal quotation marks omitted). It applies to "preclude [ ] a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." *Id.* (internal quotation marks omitted).

. . . .

"The New Mexico Supreme Court has adopted the rules set forth in *Restatement (Second) of Judgments* Sections 24 and 25 for defining the scope of a 'claim' or 'cause of action' that is barred by a prior judgment." *Strickland,* 130 F.3d at 1411, citing *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 652 P.2d 240, 245 (1982), *overruled in part on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467, 469 (1986). Section 24(2) provides:

> What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Mascarenas Enter., Inc. v. City of Albuquerque*, No. 12–2003, 494 Fed. App'x 846, 850-53, 2012 WL 3292396, *3-*6 (10th Cir. Aug. 14, 2012).

> The present trend is to see a claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights.

Restatement (Second) of Judgments § 24, cmt. a. (1982). *See also id.,* cmt. c ("That ... different legal theories ... may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the

> several legal theories depend on different shadings of the facts ... or would call for different measures of liability or different kinds of relief.").

*Id.* at 854, 2012 WL 3292396, *7. Therefore, where "the state court would have had jurisdiction over the claims that [a plaintiff] attempted to bring in the second suit, . . . the second suit [is] precluded by res judicata." *Id.* at 854-55, 2012 WL 3292396 at *7.

The Court finds that the facts underlying the first and second suits derive from the same set of events and transactions. They are related in time, space, and origin, and the Plaintiffs undisputedly knew about all of Thomas's alleged wrongdoing between the time he took control of the Trust on March 26, 2008 and his filing of the informal probate of Helen's will on February 11, 2011 -- long before the first state-court suit was dismissed with prejudice in May 2012.

Plaintiffs contend that the state-court Order dismissing their first case against Thomas "did not address or make any findings on whether an issue of genuine material fact existed" or state whether Defendant was "entitled to a judgment as a matter of law under Rule 1-056, NMRA" and that the dismissal was "based upon a technical issue of substitution of party" and "limited in scope and application," therefore, "there was no determination made of the issues on the merits." Doc. 33 at 9-10. As noted above, however, the state district judge specifically stated that it was ruling on Thomas's "motion for summary judgment" and the court made three critical ultimate findings of fact that were dispositive of the Plaintiffs' claims: that Thomas "is the Trustee of the Mendenhall Trust;" that Scott and Gina "have no interest in the Trust;" and that Thomas "is the duly appointed Personal Representative of the Estate of Helen Estine Mendenhall." Doc. 27-8 at 1. The New Mexico Supreme Court has held that, when a district court fails to specifically find and state in an order that "there [were] no genuine issues as to any material fact in granting appellee's motion for summary judgment," if it is "clearly apparent" from the record the basis on which summary judgment was granted, the court will not find error.

*Akre v. Washburn*, , 92 N.M. 487, 490, 590 P.2d 635, 638 (1979).  The conversion and breach-of-fiduciary-duty claims were based upon the Plaintiffs' bald assertion, which they totally failed to support on summary judgment, that Helen was competent, therefore Thomas's succession as Trustee and control of the Trust assets was invalid and unlawful.  And as noted above, Thomas submitted an unrebutted affidavit stating that Scott and Gina refused to allow Thomas to see or talk to Helen after they took Helen to Georgia for the year that she lived after she left Thomas's home; that Helen had never revoked the Trust or made a demand for distributions for her health, education, support or maintenance expenses; and that there was no evidence that her needs were not met by Thomas's distribution to her of $2000 when she left New Mexico, the $7000 in cash that Helen had saved and Thomas gave to Scott in 2008 to hold for Helen when she moved to New Mexico, Helen's spousal social security payments of $1715/month that Scott collected on her behalf in 2010, her various medical insurances, and her income from her separate trust that Scott controlled.  *See* Doc. 27-4 at 7-10.  Thomas pointed out to the state district judge that Plaintiffs never rebutted Thomas's sworn statements and documentary evidence, *see* Doc. 27-7 at 1-3, so there existed no genuine issues of material fact regarding whether Helen was competent or whether Thomas was the lawful Trustee or whether he had converted assets.  The state-district judge's finding that Thomas, and not Scott or Gina, was Helen's estate's personal representative was a ruling that they had no right to continue to prosecute Helen's claims against Thomas.  The district court's ruling after Helen's death that Scott and Gina had no "interest in the trust," where they were the beneficiaries of Helen's estate, is an implicit ruling that Thomas had not unlawfully failed to distribute assets to Helen that would have ended up in her bank accounts, which ultimately were distributed to Scott and Gina under the terms of the 2001 will.  If the state court was wrong about any of these findings and conclusions, Scott and Gina should have

13

appealed the decision to the New Mexico Court of Appeals, but they did not do so. "[W]hen a claim has been dismissed with prejudice, the fourth element of res judicata (a final valid judgment on the merits) will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction." *Kirby v. Guardian Life Ins. Co. of Am.,* 148 N.M. 106, 231 P.3d 87, 106 (2010). Given the undisputed record, it seems clear to the Court that the state district judge dismissed the first state-court suit on the merits, and that Scott and Gina had a full and fair opportunity to litigate the issues that they again bring in the Complaint filed in the suit at bar.

Plaintiffs finally contend that res judicata does not apply because the parties in the 2010 state-court action and the present action are different, the first action having been brought by Helen and the Trust. Doc. 33, at 13. But they ignore the undisputed facts that, at the time the suit was filed, (1) Helen had already been adjudged to be incompetent in Indiana and they had been appointed as her guardians because of her incompetency, thus it is apparent that the suit was brought at their instruction; (2) Thomas filed counterclaims against them as third-party defendants and the district court made findings regarding their individual legal interests; (3) they responded to the motion for summary judgment filed after Helen's death as her "guardians" and Scott prepared an affidavit in an attempt to defeat summary judgment, (4) their claims in the suit at bar derive only from their status as Helen's heirs, so they stand in her shoes, and they have never claimed that they had any interest in the Trust apart from that status; and (5) the same attorney represented all of them in the prior and current litigation. Scott and Gina clearly were the driving force behind the first suit, and the legal error of bringing suit in the name of an incompetent individual instead of the names of her legal guardians will not prevent application of res judicata. "[T]he persons for whose benefit and at whose direction a cause of action is

litigated cannot be said to be strangers to the cause. . . . One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . .. as he would be if he had been a party to the record." *Montana v. United States,* 440 U.S. 147, 154 (1979) (bracket, internal quotation marks, and citation omitted).

*Smith v. Walcott*, 85 N.M. 351,512 P.2d 679 (1973), a case in which a district court dismissed a cause of action for failure to prosecute, is distinguishable and not applicable, and the Plaintiffs did not rebut the presumptively preclusive effect of the 2012 Order expressly dismissing the 2010 state-court case with prejudice. Because (1) the parties are the same or in privity, (2) the cause of action is the same and/or based on the same facts and the Plaintiffs could have brought all of the claims in the first state-court suit, (3) the Plaintiffs had a full and fair opportunity to litigate the same issues that are raised in the case at bar, and (4) there has been a final decision on the merits in the first suit, *see Kirby,* 148 N.M. 106, 231 P.3d at 105, the Plaintiffs' Complaint is barred by res judicata and must be dismissed.

**IT IS ORDERED** that Defendants' Objections [Doc. 31] are affirmed; the August 5, 2013 Order granting the motion to amend is SET ASIDE; and the Plaintiffs' motion to amend [Doc. 20] is DENIED;

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment [Doc. 26] is GRANTED and the Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

**SO ORDERED** this 31st day of March, 2014 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**CHIEF UNITED STATES DISTRICT JUDGE**